**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MIGUEL RIVERA, | No. 1:20-cv-01284 |
| Plaintiff, | |
| v. | Hon. Lewis J. Liman |
| NAVIENT SOLUTIONS, LLC, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT, NAVIENT SOLUTIONS, LLC, TO DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

I.     **INTRODUCTION**..................................................................................................1

II.   **PLAINTIFF'S ALLEGATIONS** .......................................................................2

     A.     Forbearance, Deferment and Standard Repayment. ................................2

     B.     Income Based Repayment—From $719.53 to $0.....................................3

     C.     The Late Fee at Issue. ..............................................................................4

     D.     NSL's First Explicit Instruction that Plaintiff Did Not have to Pay the Fee. ..........4

     E.     NSL's Billing Statement—Plaintiff Only Had to Pay the "Current Amount Due," which Did Not Include the Fee....................................5

     F.     NSL's Second Explicit Instruction that Plaintiff Did Not have to Pay the Fee.....................................................................6

     G.     The Loans Were Discharged in Full. .......................................................7

     H.     Plaintiff's Claims. ....................................................................................7

III.  **ARGUMENT** .....................................................................................................7

     A.     Legal Standard. ........................................................................................7

     B.     Plaintiff's Claim for Negligent Misrepresentation (Third Cause of Action) Fails As a Matter of Law. ......................................................8

     C.     Plaintiff is Not Entitled to an Injunction (Second Cause of Action) Because He Has no Ongoing Injury and Has an Adequate Remedy at Law. ........13

     D.     Plaintiff's § 349 Claim for Damages (First Cause of Action) Fails Because NSL Instructed Him Not to Pay the Fee and He was on Notice of Exactly How NSL Would Apply any Payment He Nevertheless Chose to Make. .............16

IV.   **CONCLUSION** ...............................................................................................19

**TABLE OF AUTHORITIES**

**Cases**

*Ariel (UK) Ltd. v. Reuters Group, PLC*,
    277 Fed.Appx. 43 (2d Cir. 2008) .....................................................................10, 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .........................................................................................7

*Belin v. Weissler*,
    No. 97-Civ-8787, 1998 WL 391114 (S.D.N.Y. Jul. 14, 1998) ................................12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................7, 8

*Broder v. MBNA Corp.*,
    722 N.Y.S.2d 524 (N.Y. App. Div. 2001) .............................................................17

*Crawford v. Franklin Credit Management Corp.*,
    758 F.3d 473 (2d Cir. 2014) .............................................................................9

*DiBartolo v. Abbott Laboratories*,
    914 F.Supp.2d 601 (S.D.N.Y. 2012) ..................................................................10

*Dobroshi v. Bank of America, N.A.*,
    65 A.D.3d 88 (N.Y. App. Div. 2009) ...................................................................9

*eBay v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) .......................................................................................15

*Elliot v. Nelson*,
    301 F.Supp2d 284 (S.D.N.Y. 2004) ..................................................................11

*Federal Crop Ins. Corp. v. Merrill*,
    332 U.S. 380 (1947) .......................................................................................11

*Fermin v. Pfizer, Inc.*,
    215 F.Supp.3d 209 (E.D.N.Y. 2016) .............................................................16, 17

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) .............................................................................16

*Genna v. Sallie Mae, Inc.*,
    No. 11-cv-7371 (LBS), 2012 WL 1339482 (S.D.N.Y., Apr. 17, 2012) ......................9

*Glidepath Holding B.V. v. Spherion Corp.*,
590 F.Supp.2d 435 (S.D.N.Y. 2007)......................................................................12

*Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*,
958 N.E.2d 77 (N.Y. 2011).............................................................................8, 9

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
227 F.3d 8 (2d Cir. 2000) ...................................................................................8

*Hyland v. Navient Corporation*,
No. 18-cv-9031 (DLC), 2019 WL 2918238, *11 (S.D.N.Y., July 8, 2019) ...........9

*Koch v. Greenberg*,
14 F.Supp.3d 247 (S.D.N.Y. 2014)......................................................................15

*Kommer v. Bayer Consumer Health*,
252 F.Supp.3d 304 (S.D.N.Y. 2017)....................................................................14

*La Vigne v. Costco Wholesale Corporation*,
284 F.Supp.3d 496 (S.D.N.Y. 2018)....................................................................17

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
108 F.3d 1531 (2d Cir. 1997)...............................................................................12

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
306 F.Supp.3d 629 (S.D.N.Y. 2018)....................................................................17

*McGill v. General Motors Corp.*,
231 A.D.2d 449 (N.Y. App. Div. 1996) ...............................................................10

*Milich v. State Farm Fire & Cas. Co.*,
513 Fed.Appx. 97 (2d Cir. 2013)............................................................16, 17, 18

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016).........................................................................13, 14

*O'Neill v. Standard Homeopathic Company*,
346 F.Supp.3d 511 (S.D.N.Y. 2018)..............................................................13, 14

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
647 N.E.2d 20 (N.Y. 1995)...........................................................................16, 18

*Sands v. Ticketmaster-New York, Inc.*,
616 N.Y.S.2d 362 (N.Y. App. Div. 1994) ............................................................17

*Waksman v. Cohen*,
No. 00-Civ-9005, 2002 WL 31466417 (S.D.N.Y. Nov. 4, 2002)...........................12

**Statutes**

New York Deceptive Practices Act § 349 ............................................................................... *passim*

**Other Authorities**

34 C.F.R. § 682.215 ............................................................................................................. 3

34 C.F.R. § 682.215(b)(1)(iii) ......................................................................................... 3, 11

34 C.F.R. § 682.215(c)(1) ................................................................................................. 4, 6

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 1, 7

Defendant, Navient Solutions, LLC ("NSL"), submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6).

## I. __INTRODUCTION__

Despite NSL's repeated instructions that he was not required to do so, Plaintiff continued to make payments on his student loans for more than three years, including during a time Plaintiff now contends he could not afford to do so. Plaintiff acknowledges in his Complaint that NSL told him payments were not due while he was in an Income Based Repayment ("IBR") plan. Plaintiff also admits that he understood NSL's instructions in this regard. Nevertheless, he continued to voluntarily make payments, which NSL applied to the interest owed on his loans, as required by federal law.

Plaintiff now brings this lawsuit claiming that NSL's billing statements were deceptive and caused the alleged losses stemming from his voluntary payments. He seeks to recoup those payments and at least six-figures for alleged emotional distress. But as explained below, Plaintiff cannot plausibly assert these claims where NSL's billing statements explain clearly how payments are applied for customers in IBR plans, and where NSL representatives expressly told Plaintiff that he did not need to make the payments. Plaintiff ignored the billing statements and explicit instructions from NSL, and his choice to continue making payments cannot, as a matter of law, give rise to any cause of action against NSL.

As to his specific claims, Plaintiff's claim for negligent misrepresentation (Third Cause of Action) fails as a matter of law. Based on the facts alleged in his Complaint, this cause of action fails to demonstrate three of the five elements required for a cognizable negligent misrepresentation claim under New York law. First, there was no special relationship between NSL and Plaintiff that could support such a claim. Second, NSL did not pass any false information

to Plaintiff. And third, Plaintiff did not reasonably rely on any alleged false information to his detriment.

Plaintiff's claim for an injunction under § 349 of the New York Deceptive Practices Act (First Cause of Action) fails because Plaintiff, by his own admission, is no longer a NSL borrower and, thus, no longer receives NSL's billing statements. Accordingly, he is not even in any *theoretical* danger of further alleged injury. He also fails to allege that he passes even one of the prongs of the Second Circuit's requirements for an injunction.

Lastly, Plaintiff's claim for damages under § 349 (Second Cause of Action) likewise fails. Plaintiff cannot pick and choose which parts of the billing statements he claims were deceptive for the purpose of advancing his claim, while ignoring other statements that undermine that claim. To the contrary, the law requires that a plaintiff consider the totality of the information presented to him. Here, Plaintiff's claims depend on his ignoring entire parts of NSL's billing statements and the explicit instructions he received from NSL over the phone.

Plaintiff thus fails to state any viable claim for relief and, as such, the Court should dismiss the entire Complaint with prejudice.

## II. <u>PLAINTIFF'S ALLEGATIONS</u>

Plaintiff contends that he has federal student loans serviced by NSL (the "Loans"). (Compl., ¶¶ 1-2.) The Loans were the product of a 2007 consolidation; Plaintiff consolidated "his undergraduate and graduate loans" into two FFELP (Federal Family Education Loan Program) consolidation loans (the "Loans"). (*Id.*, ¶ 134.)

### A. <u>Forbearance, Deferment and Standard Repayment.</u>

According to Plaintiff, the Loans were in forbearance from 2007 to 2011. (Compl., ¶¶ 136-137.) Plaintiff alleges that, in January 2011, when the forbearance on the Loans ended, he entered into a repayment plan with NSL and began making monthly payments. (*Id.*, ¶¶ 137-138.) Plaintiff

was only able to make a few monthly payments, until he lost his job and NSL granted him deferments on his loan payments. (*Id.*, ¶¶ 139-143.) After the second deferment ended in August 2013, Plaintiff entered a new repayment plan and made monthly payments for approximately a year, through August 2014. (*Id.*, ¶¶ 143-144.)

**B.     Income Based Repayment—From $719.53 to $0.**

In December 2014, Plaintiff applied for an Income Based Repayment ("IBR") plan, which NSL approved. (Compl., ¶ 149.) IBR is a federal repayment program that aids borrowers who, due to a financial hardship, have difficulty meeting their regular monthly student loan obligations. (*Id.*, ¶¶ 27-47.) While in IBR, a borrower's monthly payments are calculated based on disposable income, not overall debt burden. In an IBR plan, a borrower pays only what he can afford, even if that amount is not reflective of what he owes in full. (*Id.*; *see also* 34 C.F.R. § 682.215.) As Plaintiff contends, where a borrower has little or no income, the IBR payment may be as low as $0. (Compl., ¶ 43; *see also* 34 C.F.R. § 682.215(b)(1)(iii).)

As a result of his December 2014 acceptance into IBR, NSL lowered Plaintiff's required monthly payment from $719.53 to $389.83. (Compl., ¶ 149.) Between December 2014 and March 2015, Plaintiff made those (reduced) monthly payments under his IBR plan. (Compl., ¶ 150.) Plaintiff alleges that, in April 2015, he lost his job and missed his monthly payment. (*Id.*) In response, NSL assessed a late fee of $23.39 (the "Fee"). (*Id.*, ¶ 151.) Plaintiff does not contest the validity of the Fee.

In May 2015, Plaintiff requested that NSL lower his IBR payment in light of his loss of employment and a reduction in income to just unemployment benefits. (Compl., ¶¶ 153-156.) In July 2015, after Plaintiff had substantiated his lower income, his required IBR payment was reduced to $52.31. (*Id.*, ¶¶ 157-158.) In August 2015, Plaintiff unfortunately entered a period of homelessness and, a few months later, in October 2015, Plaintiff's unemployment benefits ran out.

(*Id.*, ¶¶ 164-165.) As a result, in March 2016, Plaintiff re-applied for IBR and, given his financial situation, his required monthly payment amount was lowered to $0. (*Id.*, ¶ 172.)

### C. **The Late Fee at Issue.**

The $23.39 Fee was assessed to Plaintiff's account ***before*** his monthly payment amount was lowered to $0, and was not waived. But, critically, Plaintiff was not required to pay it under his IBR plan. To the contrary, his required monthly payment was still $0—a fact Plaintiff concedes NSL told him, twice. (Compl., ¶¶ 174-175, 184-186.)

Nevertheless, Plaintiff made dozens of monthly $23.39 payments, which he apparently believed were to pay off the Fee. (Comp., ¶¶ 175-178.) But, as Plaintiff acknowledges, federal law (not NSL) dictates how payments for borrowers under an IBR plan are applied. In any IBR plan, the loan servicer must first apply any payments to accrued interest, then to collection costs, then to fees and, finally, to loan principal. (Compl., ¶ 177; *see also* 34 C.F.R. § 682.215(c)(1).) Thus, if a borrower's IBR payment is insufficient to cover accrued interest (which Plaintiff's payment was), it will not be applied anything else, including late fees. *Id.*

Consequently, even though Plaintiff thought he paid off the Fee, he did not, and so it continued to appear on his monthly billing statements. (Compl., ¶¶ 157-159, 161-163, 173, 177.) Plaintiff then kept paying the Fee every month from August 2015 "through the middle of 2019." (*Id.*, ¶ 162.) He admits that NSL properly allocated these payments to accrued interest on his Loans pursuant to federal regulations. (*Id.*, ¶ 161; *see also* 34 C.F.R. § 682.215(c)(1).)

### D. **NSL's First Explicit Instruction that Plaintiff Did Not have to Pay the Fee.**

In April 2016, Plaintiff claims he "called Navient to ask why he was supposed to pay $23.39 when an earlier letter said his IBR payment was $0.00." In response, Plaintiff concedes that "[t]he Navient agent said ***he was only required to pay the IBR payment of $0.00*** and the $23.39 was for late fees." (*Id.*, ¶ 174 (emphasis added).) Plaintiff readily admits that he

"understood what the agent said." (*Id.*, ¶ 175.) Yet, Plaintiff contends that he ignored the agent's instruction and continued paying the Fee each month "throughout 2016." (*Id.*, ¶¶ 175, 178.)

   **E.    NSL's Billing Statement—Plaintiff Only Had to Pay the "Current Amount Due," which Did Not Include the Fee.**

Plaintiff now contends that he was deceived by NSL's billing statements. (*Id.*, ¶ 163.) As Plaintiff alleges, there are two amounts listed in the billing statements—the "Total Payment Due" and the "Current Amount Due." (Compl., Ex. A.) The "Total Payment Due" is the sum of the Current Amount Due ($0), any past due amounts (here, $0) and any unpaid fees (here, $23.39). (*Id.*) This calculation is reflected on the billing statement as follows:

| | |
|---|---|
| Past Due Amount (Pay Now) | $0.00 |
| Pay Past Due Amount By 07/11/19 to avoid Late Fee of | $0.00 |
| Current Amount Due | $0.00 |
| Current Amount Due Date | 07/26/19 |
| Pay Current Amount Due (+ any Past Due Amount) by 08/10/19 to avoid additional Late Fee of | $0.00 |
| Unpaid Fees | $23.39 |
| Total Payment Due (Past Due Amount + Current Amount Due + Unpaid Fees) | $23.39 |

(*Id.*)

But as NSL explained to Plaintiff on the phone, the "Current Amount Due" was the only amount that Plaintiff was required to pay. (Compl., ¶ 174.) And that was also spelled out on the third page of the billing statements as follows:

If you are on an Income-Driven Repayment (IDR) plan, your payments must be applied to Unpaid Interest first, then Unpaid Fees, then Unpaid Principal. In order to satisfy any outstanding Late Fees, you would need to make a payment equal to your Unpaid Interest plus the Unpaid Fees. This is for informational purposes only. You are not required to pay more than the present amount due to remain current during the IDR plan.

(*Id.*, Ex. A, p. 3.[1]) Between December 2014 and June 2015, Plaintiff's "Current Amount Due" was $389.83 under his IBR Plan. (Compl., ¶¶ 149-150, 153-158.) Between July 2015 and March 2016, it was $52.31. (*Id.*, ¶¶ 157, 172.) And after March 2016, it was reduced to $0. (*Id.*, ¶ 172.) This is an example from the billing statement that Plaintiff attached to his Complaint:

| Current Amount Due | $0.00 |
|---|---|
| Current Amount Due Date | 07/26/19 |

(*Id.*, Ex. A, p. 1.) None of the "Current Amounts Due" referenced above included the Fee.

In sum, the billing statements themselves make clear that, for borrowers in IBR plans like Plaintiff's, the borrower must only pay the "Current (or present) Amount Due." The NSL agent told Plaintiff the same thing—he only had to pay the current amount due, which was $0. (Compl., ¶ 174.) The billing statements further explain that ***any payment*** is first applied to accrued interest, then collection costs, fees and, finally, principal. (*Id.*, Ex. A.) That is also set forth in the federal regulations, as Plaintiff acknowledges. (*Id.*, ¶ 177; *see also* 34 C.F.R. § 682.215(c)(1).) Plaintiff was thus on notice that if he made a payment, it would be applied in exactly the manner in which it was here.

### F. NSL's Second Explicit Instruction that Plaintiff Did Not have to Pay the Fee.

In January 2017, Plaintiff re-applied for IBR and NSL approved the reapplication, again confirming Plaintiff's required monthly payment to be $0. (Compl., ¶ 183.) Because he was still seeing the Fee on his monthly statements, Plaintiff again called NSL to discuss it. (*Id.*, ¶ 184.) As before, "[t]he agent informed him that ***the minimum payment was $0.00*** and that the $23.39 was for late fees." (*Id.* (emphasis added).) Once again, though, Plaintiff disregarded this instruction

---

[1] IBR (Income-Based Repayment) is a type of IDR (Income-Driven Repayment).

and continued to pay $23.39 per month "every month in 2017, 2018 and through the middle of 2019." (*Id.*, ¶ 185-186.) In total, Plaintiff alleges that, between 2016 and 2019, he "paid $1,099.33 to Navient that he was not required to pay." (*Id.*, ¶ 203.) Consistent with federal law, "[e]ach payment was allocated to interest and not to the single late fee of $23.39 he incurred in April 2015 when he lost his job." (*Id.*, ¶ 187.)

### G. The Loans Were Discharged in Full.

In August 2019, Plaintiff received a disability discharge, and his obligation to further pay back the Loans was extinguished forever, including the Fee. (*Id.*, ¶¶ 205-208.) As a result, NSL is no longer servicing the Loans.

### H. Plaintiff's Claims.

Plaintiff now brings claims for injunctive and legal relief under New York General Business Law § 349 (First and Second Causes of Action) and a common law tort claim for negligent misrepresentation (Third Cause of Action). Through the injunction (First Cause of Action), Plaintiff seeks to "enjoin Defendant from using similar billing practices and billing statements" that are at issue here. (Compl., ¶ 226.) Plaintiff seeks actual damages, including pecuniary damages of $1,099.33 and at least $100,000 for alleged emotional distress, as well as attorneys' fees under § 349.  (*Id.*, ¶¶ 229-230, Prayer.)

## III. ARGUMENT

### A. Legal Standard.

To survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The court will affirm a Rule 12(b)(6) dismissal "only if the plaintiff fails to provide factual allegations sufficient to raise a right to relief above the speculative level." *Id.* A pleading that offers "labels

and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, 557.

**B.    Plaintiff's Claim for Negligent Misrepresentation (Third Cause of Action) Fails As a Matter of Law.**

Plaintiff's claim for negligent misrepresentation fails for three reasons. "Under New York law, the elements for a negligent misrepresentation claim are that: (1) the defendant had a duty, as a result of a ***special relationship***, to give correct information; (2) the defendant made a ***false representation*** that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff ***reasonably relied*** on it to his or her detriment." *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000) (emphasis added). Plaintiff's Complaint fails at least the first, second and fifth elements. Namely, there was no special relationship between the parties, NSL made no false representations, and Plaintiff did not reasonable rely on any statements by NSL to his detriment.

**1.    There was no special relationship between Plaintiff and NSL sufficient to support a claim for negligent misrepresentation.**

Under New York law, negligent misrepresentation is not cognizable absent a special relationship between the plaintiff and the defendant. Numerous cases make clear that there is no special relationship between a student loan borrower like Plaintiff and a loan servicer like NSL. Moreover, Plaintiff's purported bases for this claim in the Complaint—NSL's advertising and the fact that it happens to be regulated by the federal government—are insufficient to establish a special relationship.

As an initial matter, the Second Circuit has recognized that, under New York law, including the Court of Appeals decision in *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 958

N.E.2d 77 (N.Y. 2011), "an arm's length borrower-lender relationship does not support a cause of action for negligent misrepresentation." *Crawford v. Franklin Credit Management Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (internal punctuation omitted) (*citing Greenberg*, 958 N.E.2d at 84 (N.Y. 2011). The New York Appellate Division reached a similar result in *Dobroshi v. Bank of America, N.A.*, 65 A.D.3d 88, 108-109 (N.Y. App. Div. 2009), finding that "[t]his court has repeatedly held that an arm's length borrower-lender relationship is not of a confidential or fiduciary nature and therefore does not support a cause of action for negligent misrepresentation."

Similarly, the relationship between student loan servicers and borrowers does not meet the high standard necessary to give rise to a cause of action for negligent misrepresentation. *See Genna v. Sallie Mae, Inc.*, No. 11-cv-7371 (LBS), 2012 WL 1339482, *5 (S.D.N.Y., Apr. 17, 2012) (granting motion to dismiss, stating that "the case law is sufficiently clear and consistent that, in New York, an arm's length borrower-lender relationship does not support a cause of action for negligent misrepresentation" (*citing Dobroshi,* 65 A.D.3d at 108-109).  In another, more recent case, *Hyland v. Navient Corporation*, No. 18-cv-9031 (DLC), 2019 WL 2918238, *11 (S.D.N.Y., July 8, 2019), this Court granted a motion to dismiss and dismissed a negligent misrepresentation claim against Navient Corporation and NLS, reiterating both that the "general rule is that a lender does not owe tort duties to a borrower" and that, in particular, the rule applies to "both lenders and loan servicers."

The same result should follow here. Though Plaintiff alleges that he and NSL shared a "special or privity-like relationship" (Compl. ¶ 238), there are no facts in the Complaint that would substantiate any such relationship.

Plaintiff's attempt to plead a "special or privity-like relationship" is apparently predicated on NSL's advertising and the fact that NSL is regulated by the United States Department of

Education. (Compl., ¶¶ 239-243.) But these alleged facts do not establish an actual course of conduct between NSL and Plaintiff sufficient to create a relationship or duty necessary to sustain his claim. Being federally regulated does not create a special relationship between NSL and Plaintiff and there is no authority to support that contention.

And the relevant authority on the issue of whether advertising can give rise to a "special relationship" is actually fatal to Plaintiff's theory here. *See, e.g., McGill v. General Motors Corp.*, 231 A.D.2d 449, 450 (N.Y. App. Div. 1996) (advertising insufficient to give rise to special relationship necessary for cognizable claim for negligent misrepresentation); *DiBartolo v. Abbott Laboratories,* 914 F.Supp.2d 601, 624 (S.D.N.Y. 2012) (granting motion to dismiss negligent misrepresentation claim where basis was allegedly misleading advertising).

Plaintiff therefore cannot maintain a cause of action against NSL for negligent misrepresentation because the parties were not in a special relationship within the meaning of New York law. No amount of discovery nor an amendment could cure this deficiency and, for that reason, any amendment would be futile. *See, e.g., Ariel (UK) Ltd. v. Reuters Group, PLC*, 277 Fed.Appx. 43, 45-46 (2d Cir. 2008) (affirming S.D.N.Y. decision to grant motion to dismiss and dismiss claims with prejudice where amendment would have been futile). The Court should thus dismiss Plaintiff's Third Cause of Action with prejudice.

> **2.    NSL did not make any false representations because Plaintiff admits NSL told him he did not owe anything, and both the NSL billing statements and federal law make clear how any payments Plaintiff chose to make would be applied.**

Even if Plaintiff and NSL shared a special relationship necessary for a negligent misrepresentation claim, based on Plaintiff's own allegations, NSL did not make any false representations to him. To the contrary, NSL made explicitly clear that Plaintiff did not have to

pay the Fee. And the billing statements make clear that, if Plaintiff chose to make a payment anyway, it would be applied exactly as NSL applied it.

First, NSL's billing statement in conjunction with NSL's over-the-phone instructions made clear to Plaintiff that he only had to pay the Current (or present) Amount Due—$0—and that any payment he chose to make above that would be allocated first to unpaid interest, then to the Fee. (Compl., ¶¶ 174-175, 184-185, Ex. A, p. 1, 3.) Plaintiff admits he understood NSL's instructions. (*Id.*, ¶ 175.)

Second, Plaintiff was on constructive, legal notice on exactly how NSL would apply any payment he chose to make. *See Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-385 (1947) ("Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents."). As discussed above, the required allocation of Plaintiff's payments was set forth in a codified federal regulation. 34 C.F.R. § 682.215(b)(1)(iii).

As Plaintiff acknowledges in his Complaint, the interest on his Loans continued to accrue during the time he was in IBR, even though he was not paying it down each month. (Compl., ¶¶ 38, 161, 177.) And, though Plaintiff contends that he "did not understand that his attempted late fee payment was going to interest, not the late fee," that allegation ignores both the billing statement (Compl., Ex. A, p. 3) and federal law (34 C.F.R. § 682.215(b)(1)(iii)).

In short, there was no false representation, which is fatal to Plaintiff's negligent misrepresentation claim. *See, e.g., Elliot v. Nelson*, 301 F.Supp2d 284, 287 (S.D.N.Y. 2004) ("negligent misrepresentation claim fails as a matter of law because . . . Defendants' alleged representations were not false . . . .").

### 3. Plaintiff could not have reasonably relied on any alleged misrepresentations to his detriment.

Plaintiff's negligent misrepresentation claim also fails because he did not and could not have reasonably relied on any alleged misrepresentations. Any reliance Plaintiff may have placed on the "Total Amount Due" listed in the billing statements was not reasonable in the face of: (1) the other information on the billing statements demonstrating that his payment amount was $0; and (2) NSL's telephone instructions that Plaintiff did not need to make a payment. Plaintiff instead chose to disregard this information.

A plaintiff cannot pick and choose which representations he will rely on and which he will ignore. To the contrary, numerous courts have held that a plaintiff must instead make use of all the information available to him. *See, e.g., Glidepath Holding B.V. v. Spherion Corp.*, 590 F.Supp.2d 435, (S.D.N.Y. 2007) (explaining that a failure to "examine readily available information" is among the most common bases on which "courts have granted motions to dismiss because of a failure to adequately plead reasonable reliance"); *Waksman v. Cohen*, No. 00-Civ-9005, 2002 WL 31466417, at *7 (S.D.N.Y. Nov. 4, 2002) (reliance on defendant's alleged omission was unreasonable where plaintiff cursorily scanned memoranda with information reasonably indicating defendant's fraud); *Belin v. Weissler*, No. 97-Civ-8787, 1998 WL 391114, at *7 (S.D.N.Y. Jul. 14, 1998) (reliance on oral representation regarding insurance amount was unreasonable where plaintiff could have asked to see policy); *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1534 (2d Cir. 1997) (reliance on verbal representation that a memo contained certain information was not reasonable where plaintiff could simply have reviewed memo).

Here, Plaintiff not only had the opportunity to examine information relevant to the alleged misrepresentations, he in fact *did* examine that information. As the Complaint candidly admits, Plaintiff discussed this matter with NSL on two separate occasions and, each time, NSL

representatives explained to Plaintiff that he did <u>not</u> have to pay the Fee. (Comp., ¶¶ 174-175, 184-186.) Yet, armed with this information, Plaintiff voluntarily chose to pay the Fee anyway. (*Id.*) Plaintiff did not rely on any alleged misrepresentation, much less reasonably so. To the contrary, Plaintiff **ignored** NSL's instructions on the very issue about which he now sues for negligent misrepresentation. On these allegations, Plaintiff's claim for negligent misrepresentation fails as a matter of law.

### C. Plaintiff is Not Entitled to an Injunction (Second Cause of Action) Because He Has no Ongoing Injury and Has an Adequate Remedy at Law.

In his First Cause of Action, Plaintiff seeks to "enjoin Defendant from using similar billing practices and billing statements" that are at issue here. (Compl., ¶ 226.) The Court should dismiss Plaintiff's claim for an injunction because he has no ongoing injury, has an adequate remedy at law, and does not plead a sufficient basis for any injunctive relief.

While New York General Business Law § 349 contemplates injunctive relief, it does not relieve a plaintiff from the dual obligations of showing standing and properly pleading entitlement to an injunction under the Second Circuit's standard. Here, Plaintiff lacks standing because, based on his own allegations, his loans were discharged and NSL is no longer servicing them. Thus, Plaintiff is in no danger of receiving any billing statements, which he alleges violate § 349, and an injunction will not benefit him. Further, Plaintiff does not even attempt to plead that he meets the high standard necessary for an injunction to be granted in this Circuit.

### 1. Plaintiff lacks standing for an injunction and he has an adequate remedy at law for damages.

Plaintiffs in this Circuit lack "standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." *O'Neill v. Standard Homeopathic Company*, 346 F.Supp.3d 511, 526 (S.D.N.Y. 2018) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)). "Although past injuries may provide a basis for standing to seek money damages, they

do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is ***likely to be harmed again in the future in a similar way.***" *Id*. (emphasis added).

The Second Circuit's *Nicosia* case is instructive. The plaintiff purchased a weight loss drug from Amazon that he later claimed was toxic. *Nicosia*, 834 F.3d at 226. Based on his allegations, however, he did not intend to buy more of the drug in the future. *Id*. Amazon moved to dismiss the injunction claim. The U.S. District Court for the Eastern District of New York granted the motion and the Second Circuit affirmed, holding that the plaintiff "did not establish a likelihood of future or continuing harm" because "he ha[d] not shown that he [was] likely to be subjected to further sales by Amazon of products containing sibutramine." *Id.* at 239.

Similarly, in *O'Neill,* this Court granted a motion to dismiss an injunction claim because the plaintiffs' allegations showed that they did not intended to purchase "any products from any [d]efendants, let alone the relevant homeopathic teething products." *O'Neill*, 346 F.Supp.3d at 526-527. Consequently, they lacked standing to sue for an injunction under § 349. *Id. at* 527. Under these circumstances, the plaintiffs "failed to establish a likelihood of future or continuing harm." *Id.*; *see also Kommer v. Bayer Consumer Health*, 252 F.Supp.3d 304, 310 (S.D.N.Y. 2017) (relying on *Nicosia*, granting motion to dismiss and dismissing injunction claim where the plaintiff failed "to demonstrate how [he] is likely to be subject to any future or continuing harm from the Defendant.")

The same result should follow here. Like the plaintiffs in *Nicosia* and *O'Neill*, Plaintiff's own Complaint shows that he is not in danger of any continuing injury. As Plaintiff alleges, his Loans were discharged more than a year ago and, thus, he is no longer a customer of NSL's and, as such, is not receiving any billing statements. (Compl., ¶¶ 204-205.) Clearly, he cannot be deceived by statements that he no longer receives. Moreover, given the irrevocable nature of a loan

discharge, there is no way that Plaintiff could amend his Complaint to state a cognizable claim for an injunction. *See*, *e.g.*, *Ariel*, 277 Fed.Appx. at 45-46.

### 2. Plaintiff fails to plead the required elements for an injunction.

There are four required elements for an injunction and Plaintiff does not plead any of them. "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Importantly, "[w]hile the GBL [§ 349] provides a statutory basis for [a plaintiff to seek an injunction], this statutory right of action does not vitiate the need to satisfy the factors outlined in *eBay*." *Koch v. Greenberg*, 14 F.Supp.3d 247, 283 (S.D.N.Y. 2014).

Here, Plaintiff does not plead facts to satisfy the *eBay* factors required for an injunction. Among other things, Plaintiff does not allege that he suffered an irreparable injury, or how the damages he demands would be inadequate to compensate him should he prove his claims. Plaintiff fails to even attempt to explain how the balance of hardships between himself and NSL tips in his favor so as to warrant an injunction. Nor could he for the reasons discussed above—because Plaintiff's Loans were discharged and NSL is no longer sending him billing statements, an injunction would serve no purpose. In short, Plaintiff is not entitled to an injunction and states no viable basis for this relief, and the Court should dismiss Plaintiff's First Cause of Action with prejudice.

**D.    Plaintiff's § 349 Claim for Damages (First Cause of Action) Fails Because NSL Instructed Him Not to Pay the Fee and He was on Notice of Exactly How NSL Would Apply any Payment He Nevertheless Chose to Make.**

Plaintiff's Second Cause of Action—his claim for monetary damages under § 349—fails due to the lack of any recoverable "deception." "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Milich v. State Farm Fire & Cas. Co.*, 513 Fed.Appx. 97, 97-98 (2d Cir. 2013) (*citing Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). "Deceptive acts are defined objectively as acts likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id*. But following the enactment of § 349, and to avoid a "tidal wave of litigation," the New York Court of Appeals adopted "an objective definition of deceptive acts and practices, whether representations or omissions, limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 20, 25-26 (N.Y. 1995) "The term 'likely' indicates that deception must be probable, not just possible." *Fermin v. Pfizer, Inc.*, 215 F.Supp.3d 209, 211 (E.D.N.Y. 2016) (citation omitted).[2]

Consequently, numerous courts have held that a § 349 claim fails where a reasonable consumer could not have relied on allegedly deceptive information because they chose to focus on one piece of information while ignoring the rest. Rather, reasonable consumers must take into account ***all*** of the information at their disposal. *See, e.g.*, *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (holding that "under certain circumstances, the presence of a disclaimer

---

[2] The Court may determine, as a matter of law, that an allegedly deceptive practice would not have misled a reasonable consumer. *See, e.g., Fermin*, 215 F.Supp.3d at 211 ("It is well settled that a court may determine as a matter of law that an allegedly deceptive practice would not have misled a reasonable consumer."); *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (same).

or similar clarifying language may defeat a claim of deception" and affirming district court's dismissal of § 349 claim on a motion to dismiss); *La Vigne v. Costco Wholesale Corporation*, 284 F.Supp.3d 496, 515 (S.D.N.Y. 2018) (granting motion to dismiss § 349 claim where plaintiff selectively ignored part of packaging label); *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F.Supp.3d 629, 641 (S.D.N.Y. 2018) (dismissing § 349 claim where the plaintiff selectively "relied" on one section of a website while ignoring another, which "disclaims (or arguably clarifies)" the allegedly deceptive representation); *Fermin,* 215 F.Supp.3d at 211-12 (granting motion to dismiss § 349 claim where plaintiffs ignored pill count on label of medicine bottle and argued that they were mislead by the size of the bottle itself); *Broder v. MBNA Corp.*, 722 N.Y.S.2d 524, 526 (N.Y. App. Div. 2001) ("there can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed. . . ."); *Sands v. Ticketmaster-New York, Inc.*, 616 N.Y.S.2d 362, 687 (N.Y. App. Div. 1994) (dismissing § 349 claim where alleged "deceptive act or practice"—charging allegedly exorbitant ticket fees—was disclosed).

The *Milich* case is instructive. The plaintiff purchased a homeowner's policy which included a workers' compensation endorsement. *Milich,* 513 Fed.Appx. at 97-98. The plaintiff alleged that the insurer misled him into believing that the "policy provided coverage for domestic workers." *Id.* at 98. The endorsement did not, however, provide such coverage, and the plaintiff had to pay his part-time housekeeper out-of-pocket for a work-related injury. *Id*.

The endorsement, on its face, provided workers' compensation coverage to domestic workers who: (1) worked less than 40 hours per week; and (2) otherwise qualified for mandatory workers' compensation benefits under the New York Workers Compensation Law. *Id*. But one of the requirements of the Workers' Compensation Law was that workers must work at least 40 hours per week. *Id*. n 2. Thus, the endorsement was illusory as to domestic workers, since no worker

could meet both requirements for coverage—working *less* than 40 hours per week while, at the same time, working *at least* 40 hours per week. *Id. at* 98. For this reason, the plaintiff argued that "because a reasonable consumer is unlikely to know that New York Workers' Compensation Law excludes domestic employees who work less than forty hours per week," the endorsement was misleading. *Id.* Both the district court and the Second Circuit rejected this argument. *Id.* The Second Circuit held that the plaintiff's "ignorance of New York Workers' Compensation Law does not render the Endorsement misleading" and that § 349 "does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation." *Id.,* 99 (*citing Oswego*).

The same result should follow here. In fact, Plaintiff was in a *better* position than the plaintiff in *Milich*. Here, Plaintiff's entire case hinges on his claim that he was deceived into paying the Fee. But, as discussed above, Plaintiff was provided information—both in the billing statement as well as in two separate phone calls—showing that he was not required to pay the Fee and that any payments would be applied to outstanding interest first, as required by federal law.

If the plaintiff in *Milich* failed to state a § 349 claim due to his failure to read the New York Workers' Compensation law, then Plaintiff here likewise fails to state a claim in light of the information he had. Plaintiff simply cannot assert a misrepresentation considering the totality of the communications with NSL and his knowledge of the circumstances. The Court should therefore dismiss Plaintiff's Second Cause of Action with prejudice.

## IV. <u>CONCLUSION</u>

For all these reasons, NSL respectfully requests that the Court grant its Motion to Dismiss the Complaint and dismiss the Complaint with prejudice.

<u>/s/ Lijue T. Philip, LP0326</u>
Eric M. Hurwitz
Lijue T. Philip
STRADLEY RONON STEVENS & YOUNG, LLP
A LIMITED LIABILITY LAW PARTNERSHIP LLP
100 Park Avenue, Suite 2000
New York, NY 10017
T: (212) 812-4124
F: (646) 682-7180
E: ehurwitz@stradley.com; lphilip@stradley.com

*Attorneys for Defendant, Navient Solutions, LLC*

DATED: April 28, 2020