THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------x

MIGUEL RIVERA,

               Plaintiff,

                                      No.1:20-cv-01284

NAVIENT SOLUTIONS, LLC           Hon. Lewis. J. Liman

               Defendant.

---------------------------------------------x

# Plaintiff's Memorandum of Law in Opposition to Defendant's 12(b)(6) Motion to Dismiss

Johnson M. Tyler, Esq.
Edward Josephson
Shabnam Faruki
Brooklyn Legal Services
105 Court Street, 4th Floor
Brooklyn, New York 11201
(718) 237-5548 (5500 switchboard)
862-202-1850 (cell)
jtyler@lsnyc.org

*Attorneys for plaintiff Miguel Rivera*

i

## Table of Contents

I.  SUMMARY OF ARGUMENT ..................................................................1

II.  STATEMENT OF FACTS .................................................................2

III.  ARGUMENT...............................................................................6

  A.  Standard of Review .................................................................6

  B.  Mr. Rivera Adequately Pled His New York State Consumer Rights Claim 7

    1.  The consumer-oriented and injury elements of GBL § 349 are
    uncontested and satisfied ..............................................................7

    2.  The remaining GBL element is adequately pled because Defendant's
    billing statement was "likely to mislead a reasonable consumer acting
    reasonably"...............................................................................8

  C.  The Injunction Claim Cannot Be Dismissed.................................17

    1.  Addressing whether an injunction is appropriate is premature...............17

    2.  GBL 349 confers standing to enjoin deceptive conduct .........................18

    3.  The eBay test is inapplicable because Mr. Rivera's claim arises from
    state law...................................................................................19

    4.  Assuming arguendo that Mr. Rivera must satisfy the eBay standard to
    survive a 12(b)(6) motion to dismiss, he does so ...........................19

  D.  Negligent Misrepresentation Has Been Satisfactorily Pled............................21

    1.  The special relationship element of negligent misrepresentation is easily
    met 21

    2.  The second element of negligent misrepresentation, false representation,
    is satisfied because Defendant falsified Mr. Rivera's payment amount on his
    monthly billing statements.................................................................24

    3.  Mr. Rivera satisfied the fifth element of his negligent misrepresentation
    claim because he reasonably relied upon Defendant's incorrect billing
    statement. ...............................................................................24

IV.  CONCLUSION ...........................................................................25

## TABLE OF AUTHORITIES

Cases

*Ackerman v. Coca–Cola Co.,* 09–CV–395, 2013 WL 7044866, at *2–3, *14–15, *15 n. 23 (E.D.N.Y. July 18, 2013) ....................................................18

*Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir.2006) ..............................7

*Alley Sports Bar, LLC v. SimplexGrinnell, LP*, 58 F. Supp. 3d 280 (W.D. N.Y. 2014) ....................................................................................................21

*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009 .................................................................6

*Avola v. Louisiana–Pac. Corp.*, 991 F.Supp.2d 381, 393 (E.D.N.Y. 2013) .............9

*Barkley v. United Homes,* LLC, 848 F.Supp.2d 248 (E.D.N.Y. 2012) ...................19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)................................................7

*Broder v. MBNA Corp.*, 722 N.Y.S.2d 524, (1ˢᵗ Dept. 2001) ..................................12

*Burns v. Duplin Land Development, Inc.*, 621 F.Supp.2d 292 (E.D.N.C. 2009) .. 14, 15

*Burton v. Label*, LLC, 344 F. Supp. 3d 680 (S.D. N.Y. 2018)................................22

*Chandler v. Walden Asset Management, LLC*, 2017 WL 1021594 (SD Ohio, 2017) ........................................................................................................19

*Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 127 (2d Cir.2007) ... 9, 15, 16, 17

*Costo La Vigne v. Costco Wholesale Corporation*, 284 F.Supp.3d 496 (2018)......17

*Daniel v. Navient Solutions*, 328 F.Supp.3d 1319 (DC Flor. 2018) ......................23

*Delgado v. Ocwen Loan Servicing, LLC*.  13–CV–4427 (NGG)  2014 WL 4773991(E.D.N.Y. 2014)........................................................................ 13, 16

*eBay Inc. v. Mercexchange*, LLC, 547 U.S. 388, 392 (2006)......................... 19, 20

*F.T.C. v. Wilcox,* 926 F. Supp. 1091 (S.D. Fla. 1995)...........................................16

*Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380*, (1949) .....................................24

*Fermin v. Pfizer,Inc.*, 215 F.Supp.3d 209, 211 (E.D.N.Y. 2016)...........................17

*Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). ........................8, 16

*Genna v. Sallie Mae, Inc.*, No. 11 CIV. 7371, 2012 WL 1339482, at *7 (S.D.N.Y. Apr. 17, 2012) ...............................................................................................7

*Hydro Investors v. Trafalgar Power*, 227 F.3d 8, 20 (2d Cir. 2000).....................21

*Hyland v. Navient,* 18-cv-9031(DLC), 2019 WL 2918238 (S.D.N.Y. 2019) .........23

*In Re: Kind LLC litigation*, 287 F.Supp.3d 457 (S.D.N.Y. 2018)...........................25

*James v PHEAA* 2020 WL 2097640 (S.D.N.Y. 2020) ...........................................23

*Koch v. Greenberg,* 14 F.Supp.3d 247 (S.D.N.Y. 2014)............................. 17, 19, 20

*Koehler v. Litehouse*, Inc., 12–CV–04055, 2012 WL 6217635, at *6 (N.D.Cal. Dec. 13, 2012) ................................................................................18

*Kummel v. Schaefer*, 89 N.Y.2d 257 (1996); ...........................................21

*Lokai Holdings LLC v. Twin Tiger USA LLC,* 306 F.Supp.3d 629 (S.D.N.Y. 2018) ................................................................................13

*Lonner v. Simon Prop. Grp., Inc.,* 866 N.Y.S.2d 239, 247 (2d Dept. 2008) ...........13

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160, 186 (2d Cir. 2015) ................................................................................25

*Midland Funding LLC v. Brent*, 08 CV 1434, 2009 WL 3086560 (N.D. Ohio 2009) ................................................................................18

*Milich v. State Farm Fire & Cas. Co.*, 513 Fed.Appx. 97 (2d Cir. 2013) ..............16

*Minner v. Navient Corporation*, 18-CV-1086S, 2020 WL 906628 (W.D.N.Y. 2020) ................................................................................13

*Negrin v. Norwest Mortgage*, Inc., 700 N.Y.S.2d 184, 193 (2d Dep't 1999) ..........9

*Nelson v Great Lakes*, 928 F.3d 639 (7th Cir. 2019) ...................................23

*Olsen v. Nelnet,* 392 F.Supp.3d 1006 (D. Neb, 2019) ..................................24

*Orellana v. Macy's Retail Holdings, Inc.*, No. 17-CV-5192 (NRB), 2018 WL 3368716, at *14 (S.D.N.Y. July 10, 2018) ........................................13

*Orlander v. Staples, Inc.,* 802 F.3d 289 (2d Cir. 2015) ......................................9, 16

*Reynolds v. Xerox Educ. Services, Inc*., 13–CV–1223, 2014 WL 4437622 (N.D.N.Y. 2014). ......................................................................7

*Sands v. Ticketmaster-New York, Inc.*, 616 N.Y.S.2d 362, 363 (1st Dept. 1994) ....17

*Silvercreek Management, Inc. v. Citigroup, Inc.,* 346 F. Supp. 3d 473 (S.D. N.Y. 2018). ......................................................................22

*Spagnola v. Chubb Corp*., 574 F.3d 64, 74 (2d Cir.2009) .......................................7

*Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000) ............................................15

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103-04 (2d Cir. 2001) ................................................................................21

*Travis v. Navient*, 17-CV-4885 (RRM) 2020 WL 2523066, (E.D.N.Y. 2020) 18, 23

*Watts v. Jackson Hewitt Tax Service Inc*., 579 F.Supp.2d 334 (E.D.N.Y. 2008)....18

*White v. Sullivan*, No. 89–335, 1991 WL 315124 (D.C. Vt. 1991) ........................20

*Wurtzburger v. Ky. Fried Chicken*, No. 16-CV-08186 (NSR), 2017 WL 6416296, at *2 (S.D.N.Y. Dec. 13, 2017) ................................................17

Statutes

20 U.S.C. § 1098e(b)(1) ................................................................................6, 12

28 U.S.C. §§ 2201–2202 ................................................................................21

Fed. R. Civ. P. 12(b)(6)..............................................................................................4

General Business Law ("GBL") § 349 .......................................................... passim

Other Authorities

*The American Heritage Dictionary*, pg. 861, (4th Ed. 2001) ...................................13

Plaintiff Miguel Rivera ("Mr. Rivera") submits this memorandum of law in opposition to Defendant Navient Solutions, LLC's ("Navient's") motion to dismiss Mr. Rivera's complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## I.    SUMMARY OF ARGUMENT

Mr. Rivera alleges Defendant violated New York's consumer protection law (General Business Law ("GBL") § 349) by deceiving him into paying $1,099.33 more than he was legally required to pay. Plaintiff's Complaint,   ¶ 203, ECF No. 1 (hereinafter "Compl. ¶ 203"). Defendant's billing statement was "likely to mislead a reasonable consumer acting reasonably" because the "Total Payment Due" deceptively added a $23.39 late-fee that Mr. Rivera was not obligated to pay while enrolled in the Income Based Repayment program.  Mr. Rivera also claims Defendant negligently misrepresented the "Total Payment Due" by including this late-fee in his payment.  Mr. Rivera seeks the return of $1,099.33, emotional damages, an order enjoining Defendant from continuing its deceptive billing practices, and attorney's fees.

Mr. Rivera's pleadings easily satisfy all the elements of the GBL 349 claim and negligent misrepresentation claim.  His claim seeking to enjoin Defendant from continuing its deceptive billing practices is a remedy derived from New York's consumer practice statute, and hence is not subject to dismissal under Rule 12(b)(6) unless his GBL claim is dismissed.

Defendant readily admits that Mr. Rivera was not required to pay the late-fee that it included in the "Total Payment Due" listed in its billing statements.  Defendant's Memorandum of Law, page 4, ECF No. 11, (hereinafter "Def. MOL, p. 4").  Instead, Defendant callously argues that Mr. Rivera "voluntarily" paid the "Total Payment Due" because it disclosed he could pay less in the fine-print of its billing statement and through its call-center employees.  Def. MOL, p. 1.

But that fine-print is buried on page three of the statement, contradictory, and unclear.  No reasonable consumer would believe the fine-print meant he did not have to pay the "Total Payment Due" that was prominently displayed in three different places on the front page of the billing statement and in an email payment reminder entitled "snapshot of monthly statement."  Nor would a reasonable consumer disregard the payment demanded under "Total Payment Due" and instead trust the say-so of an anonymous call-center worker when the consequences of not making the proper payment – disqualification from Income Based Repayment and a massive payment increase – seem much worse than making the payment demanded in the billing statement.

## II.    STATEMENT OF FACTS

Mr. Rivera is one of millions of Americans struggling with student loan debt.  Compl. ¶¶ 1, 29, 32, 48.  In 2014, Mr. Rivera enrolled in a federally mandated program called Income Based Repayment (IBR). Compl. ¶ 149.  IBR is designed to protect struggling borrowers from hunger, despair and financial ruin.  Compl. ¶¶ 4, 29. It provides a mathematical formula for how much a borrower must pay based on his or her income.  Compl. ¶ 36.  IBR presumes that every borrower should pay nothing ($0.00) if their income is below 150% of the poverty line.  Compl. ¶¶ 36, 43. In Mr. Rivera's case, he initially had to pay $52.31 in IBR while receiving unemployment benefits, and later $0.00 when he became homeless and went on welfare. Compl. ¶¶ 158, 173, 183.

Student loan servicers are prohibited from charging more than the IBR amount determined by the formula. 20 U.S.C. § 1098e(b)(1).  Compl. ¶¶ 44, 45.  This means that even if a borrower owes a servicer a late-fee, a servicer cannot add that late-fee to the monthly amount due until after the borrower exits IBR.[1] Compl. ¶¶ 40, 44, 45.

---

[1]    A borrower exits IBR when the IBR formula produces an IBR monthly payment that is higher than what the borrower would normally pay in a standard ten-year repayment plan.

Nevertheless, Defendant, which services more than two million federally insured student loans that are similar to Mr. Rivera's[2], did exactly this. Compl. ¶¶ 49, 158, 173, 178, 183, 186, 193. It added a single late-fee of $23.39 to the "current amount due" (the IBR payment) and prominently and repeatedly demanded that inflated figure as the "Total Payment Due" in billing statements and emails it sent to Mr. Rivera. Compl. ¶¶ 162, 186. Examples of such a bill and email are attached as Exhibit A to complaint, ECF No. 1-1 (hereinafter "Exh. A, ECF No. 1-1"). Hence, Navient billed Mr. Rivera for $75.70, when only $52.31 (the IBR rate) was due, and later for $23.39, when $0.00 was due. Compl. ¶¶ 157, 158, 173, 183, 186. Believing the "Total Payment Due" was what he owed under IBR, Mr. Rivera paid Navient the improperly inflated "Total Payment Due" for 41 months. Compl. ¶¶ 225, 229.

Because of payment allocation rules, Mr. Rivera's "Total Payment Due" payments were never applied towards the single late-fee of $23.39. Compl. ¶¶ 68-72, 161, 162, 167, 173, 177, 178, 184, 186. They were first applied to interest, and since his payments (like 90% of borrowers enrolled in IBR) were less than the accrued interest, Mr. Rivera's late-fee never disappeared despite his 41 "Total Payment Due" payments that included the late-fee. Compl. ¶¶ 53, 203, 207, 225, 229.

Late-fee payments such as Mr. Rivera's have always been a significant source of revenue for Navient. Compl. ¶¶ 63, 64. In 2013, Navient settled for $33 million in a federal regulator's suit in which it was accused of manufacturing late-fees. Compl. ¶ 65. Late-fees, such as Mr. Rivera's, that are allocated to interest also generate income because complicated federal rules allow Navient to keep these payments even in cases, such as Mr. Rivera's, where the loan is

---

[2]     Mr. Rivera's loans were Federal Family Education Loans (FFEL loans). Since 2010, all new federally insured loans are issued directly from the U.S. Department of Education (Direct Loans). When Navient first deceptively billed Mr. Rivera in 2015, Navient was servicing about 2 million FFEL loans.

subsidized and Navient and its investors have already received a payment from the federal government covering all the interest that accumulated on that loan. Compl. ¶¶ 77–79.  Part of Mr. Rivera's loans were receiving such a subsidy from 2015 to 2018 when Navient improperly billed Mr. Rivera for late-fees and profited from the fact that his late-fee payment was repeatedly applied to interest that had already been paid by the government.  Compl. ¶¶  134, 149, 152.

In 2016, Defendant sent Mr. Rivera an email advising him he had successfully completed his one-year mandatory recertification for IBR and his new payment would be $0.00 based on his income (he was on welfare).  Compl. ¶ 172.  Confused by the subsequent bill he received from Navient stating his "Total Payment Due" was $23.39, Mr. Rivera called Navient and spoke to a person in the call-center.  Compl. ¶¶ 172 -175.  The call-center representative was familiar with his confusion and told him he did not have to pay the "Total Payment Due", but instead could pay just the current amount, $0.00. Compl. ¶¶ 174 -175.  The same thing happened during a call in 2017.  Compl. ¶ 183.  Both times, Mr. Rivera was not persuaded by the advice of the call-center workers because he thought Navient's billing statement was more accurate, given its obligation to conform to federal law and help struggling borrowers.  Compl. ¶¶ 175, 185.  He also feared that if the call-center workers were mistaken, he could become ineligible for IBR and be liable for a huge payment he could not afford. Compl. ¶¶ 176, 185.

In 2019, Mr. Rivera learned that Navient had illegally billed him.  Compl. ¶ 202.  By that time, he had paid over $1,000 unnecessarily to Navient over 41 months during which time he had been intermittently homeless, unemployed and on welfare.  Compl. ¶¶ 157, 164-166, 171, 181, 188.  Navient's deception deprived Mr. Rivera of cash needed for basic necessities such as rodent traps and food when he was in a shelter, and dishes, curtains, towels, clothing, and pots and pans when he obtained an apartment.  Compl. ¶¶ 170,  197-199, 231.  Lacking such basic necessities

4

caused emotional damages in that he was unable to fully enjoy his home, feel secure from hunger, or live a dignified existence.  Compl. ¶¶ 3, 168-170, 191-192, 197-200,  231.  Mr. Rivera felt shame when he borrowed money to pay Navient from friends who knew him earlier as a New York University employee with responsibilities.  Compl. ¶ 194, 232.  He felt sad and badly about himself when he pawned the only keepsake he had of his deceased mother – a charm bracelet worth $60.00 – to pay Navient the "Total Payment Due."  Compl. ¶¶ 195-196, 233.   Paying Navient while unemployed and on welfare worsened Mr. Rivera's depression, triggered suicidal ideation, and increased his sense of hopelessness.  Compl. ¶¶ 188-192, 234.

During this time, Navient serviced 2 million loans that generated late-fees, of which 230,000 were enrolled in IBR. ¶¶ 50-53.   90% of these borrowers in IBR (about 200,000) made IBR payments that did not cover their loan's monthly interest. Compl. ¶¶ 51-53.  This meant that if any of these struggling borrowers were more than 15 days late on an IBR payment, they would receive an incorrect bill that included a late-fee in the "Total Payment Due."  Compl. ¶¶ 86-88.  Worse, as in the case of Mr. Rivera, that late-fee would never be paid off.  Compl. ¶¶ 68-70, 72.

Consequently, by late 2019, Navient had received numerous complaints regarding its deceptive and incorrect billing practices.  Compl. ¶¶ 98-106.  Many were lodged with Navient's call-center, which, as Mr. Rivera experienced, became well versed in explaining that "Total Payment Due" did not mean what it said.  Compl. ¶¶ 105-106. More frustrated and persistent borrowers filed complaints with the Consumer Financial Protection Bureau ("CFPB") and Better Business Bureau ("BBB").  Compl. ¶¶ 98-102 and Exhibit B attached to Complaint, ECF No. 1-2, (hereinafter "Exh. B, ECF No. 1-2").

For example, one borrower in July 2019 complained that Navient was "misrepresenting the amount I owe on the monthly payment from {$0.00} to {$12.00}. . . ." After speaking to multiple

5

representatives who told him he didn't need to pay the late-fee of $12.00, he wrote "if I do not have to pay the fee . . ., I demand that you [Navient] stop misleading me by making it 'due' each month."  Compl. ¶ 102, Exh. B, No. 1-2, pp. 24-25.  Another borrower complained that Navient refused to return a $20 late-fee that it added to his IBR payment even after Navient admitted the late-fee payment was "optional."  Compl. ¶ 98, Exh. B, No. 1-2, pp. 2-3.

Another borrower complained that Navient was adding $500 in late-fees to his IBR payment that would not disappear. "I paid them my entire bonus from work . . . . That money was really needed for other things [including medical treatment]. . . ."  Compl. ¶ 99, Exh. B, No. 1-2, pp. 12.   Another borrower complained that Navient was "disregarding the reduced income-based amount and demanding that I pay the same [late] fees over and over."  Compl. ¶ 100, Exh. B, No. 1-2, pp. 16-17.  Another borrower complained that he was paying non-disappearing late-fees to Navient that were almost doubling his IBR payment.[3]  Compl. ¶ 101, Exh. B, No. 1-2, pp. 20-21.

In 2020, Mr. Rivera filed the instant action alleging one statutory law and one common law violation under New York law.

## III.   ARGUMENT

### A.  Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. *Allaire Corp. v. Okumus*, 433 F.3d 248,

---

[3]      The CFPB's database, as well as the Better Business Bureau's, contain at least ten other complaints, including two from New York, that are similar to the five above.  *See* Exh. B, No. 1-2.

249–50 (2d Cir.2006). A complaint may be dismissed only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires "enough fact [s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." *Id.* at 556.

## B. Mr. Rivera Adequately Pled His New York State Consumer Rights Claim

New York General Business Law § 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." GBL § 349 requires that (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result. *Spagnola v. Chubb Corp*., 574 F.3d 64, 74 (2d Cir.2009).

### 1. The consumer-oriented and injury elements of GBL § 349 are uncontested and satisfied

Defendant makes no effort to contest the consumer-oriented and injury elements of Mr. Rivera's GBL claim.  And for good reason. For the consumer-oriented prong, a plaintiff must allege that defendant's conduct has or had a "broad impact on consumers at large." *Genna v. Sallie Mae, Inc*., No. 11 CIV. 7371, 2012 WL 1339482, at *7 (S.D.N.Y. Apr. 17, 2012).  Deceptive billing practices by student loan servicers  are consumer-oriented when the servicer uses the same billing practices for borrowers other than the plaintiff. *Reynolds v. Xerox Educ. Services, Inc*., 13–CV–1223, 2014 WL 4437622  (N.D.N.Y. 2014).

Here, Navient uses the same billing practices for other borrowers, as evidenced by numerous CFPB and BBB complaints.  Compl. ¶¶ 98-103; Exh. B, ECF No. 1-2.  Moreover, in 2015, when Navient first deceptively added the late-fee to Mr. Rivera's IBR bill, Navient was

7

servicing about two million FFEL loans. Compl. ¶¶ 49, 214-215.  Consequently, all of the student loan borrowers of these 2 million loans were or will be assessed a late-fee by Defendant if their payments are more than 15 days late. Compl. ¶¶ 61-62. Further, as of 2015, 230,000 of these borrowers were enrolled in IBR of which 200,000 were paying IBR payments that did not cover their loan's interest.  Compl. ¶¶ 49-53, 217. Accordingly, tens of thousands of such borrowers were or could be subjected to illegal billing. Compl. ¶¶ 120-121.  Indeed, the robotic response Mr. Rivera received from Navient's call center as to why he was being billed more than his IBR amount suggests that many borrowers called with similar questions regarding Navient's deceptive bill.

With respect to GBL's injury prong, Mr. Rivera alleged that he made more than $1,000 in what Defendant callously mischaracterizes as "voluntary" payments, over 41 months payments while homeless and/or unemployed or on welfare.  Compl. ¶¶ 157, 164-166, 171, 181, 188.  Those unnecessary payments deprived him of cash needed for food, rodent traps, dishes, curtains, towels, clothing, and pots and pans.  Compl. ¶¶ 157, 164-166, 171, 181, 188.   Lacking such basic necessities caused emotional damages: he was unable to fully enjoy his home, feel secure from hunger, or live a dignified existence.  Compl. ¶¶ 3, 168-170, 191-192, 197-200,  231.  It also worsened his depression, triggered suicidal ideation, increased his sense of hopelessness, and deepened his shame. Compl. ¶¶ 188-192, 194, 232, 234.

2.  The remaining GBL element is adequately pled because Defendant's billing statement was "likely to mislead a reasonable consumer acting reasonably"

Under GBL § 349, the challenged representation or omission must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).  Moreover, when deceptive acts are accompanied by truthful disclosures, all those actions must be considered together. *Orlander v. Staples, Inc.*, 802 F.3d 289

(2$^d$ Cir. 2015) (plaintiff was reasonable in believing deceptive statement of salesperson, even though contract he signed contradicted statement of salesman); *see* also, *Avola v. Louisiana–Pac. Corp.*, 991 F.Supp.2d 381, 393 (E.D.N.Y. 2013) ("The entire mosaic should be viewed rather than each tile separately").

    a.   A reasonable consumer is entitled to assume that Navient's demand for "Total Payment Due" means what it says

Borrowers such as Mr. Rivera who enrolled in IBR are only required to pay the IBR amount determined by a mathematical formula.  20 U.S.C. § 1098e(b)(1).  Consequently, Defendant readily admits that Mr. Rivera "was not required to pay [the $23.39 late-fee] under his IBR plan" that it added to his "Total Payment Due."  Def.'s Memo, page 4.

This concession is fatal.  A reasonable consumer under GBL § 349 may assume that "all fees charged by a respected financial institution . . . [are] legal," even when the institution discloses the illegally imposed fee to the consumer. *Cohen v. JP Morgan Chase & Co*., 498 F.3d 111, 127 (2d Cir.2007). *See* also *Negrin v. Norwest Mortgage*, Inc., 700 N.Y.S.2d 184, 193 (2d Dep't 1999) ("Allegations of a bank's unilateral imposition of illegal and/or unwarranted fees upon its customers states a valid claim [under § 349]").

Rather than grappling with the huge consequences of mis-billing tens of thousands of financially distressed borrowers living below 150% of the poverty line, who relied on the words "Total Payment Due" to mean what they say, including Mr. Rivera, Defendant advances the ridiculous argument that Mr. Rivera should have understood that he was not required to pay the "Total Payment Due."

"Total Payment Due" can only mean one thing – that Mr. Rivera was required to pay that "total" amount, which included the illegally imposed $23.39 late-fee, or else suffer the usual

consequences of delinquency.  The adjective "total" is defined as "constituting the whole."  *The American Heritage Dictionary*, pg. 861, (4th Ed. 2001).  Consumers have been conditioned to pay the "Total Payment Due" because failure to do so will result in late-fees, increased interest, and negative credit reporting.  Indeed, many states from Pennsylvania to Oregon[4] use "Total Payment Due" as the amount their taxpayers must pay to avoid penalties, as do, mortgage, cell phone, and utility companies.[5]

Also fatal is Defendant's announcement on its website, broadcasting the dangers of not making the "Total Payment Due":

> **IMPORTANT REMINDER**
>
> If the payment doesn't satisfy the ***total payment due***, including past due amounts, **a late-fee may be assessed** (except on loans owned by the U.S. Department of Education), and **the amount of interest paid** over the life of a loan **will increase**. **Past due amounts may be reported to the consumer reporting agencies**. [bold and italics supplied] [6]

Defendant obviously shares its consumers', including Mr. Rivera's, understanding of the "Total Payment Due" and the dire consequences of not making this payment.  Its own website starkly

---

[4]      *See* 2018, Pennsylvania Personal Income Tax Return, Instruction Booklet, p. 40 (form PA-40 IN 06-19) available at https://www.revenue.pa.gov/FormsandPublications/FormsforIndividuals/PIT/Documents/2018/2018_pa-40in.pdf  ("Line 28: Total Payment Due . . . You must pay the total due, in full, on or before April 15, 2019 . . . . [Late filers] have up to a 25 percent penalty plus interest added to the amount" owed). *2020 Oregon Combined Payroll Tax Report, Instructions for Oregon Employers*,  pgs. 10, 14, (Form 150-211-155-2 (Rev 12-19) available at https://www.oregon.gov/employ/Documents/2020%20Instructions.pdf. ("Box 14: Total Payment Due: . . . [we] may charge a penalty if . . . your payment is received 10 days after the due date. The penalty will be a minimum of $50.00 . . ." A non-exhaustive google search on June 10, 2020 of "do I really have to pay the 'total payment due'?" also netted tax forms using "Total Payment Due" in Alabama, New Jersey, Massachusetts, Florida, North Dakota and Illinois.

[5]      *See*, The Official Ditech Blog, *How to Read Your Mortgage Statement*  available at http://blog.ditech.com/blog/how-to-read-your-mortgage-statement (last visited June 11, 2020) ("Total Payment Due: Total payment refers to the amount due for each of the items covered by the payment. . . . Be sure to make this payment by the date on the statement or you may be subject to late-fees, which could potentially hurt your credit score."; AT&T PREPAID Plan Terms, (last visited June 11, 2020) ("The total payment due for all lines must be paid in order to renew service."); 4Change Energy *How to Read My Bill* available at https://www.4changeenergy.com/how-to-read-bill  (last visited June 11, 2020) ("Amount Due: This is your total payment due by your due date. . . . Due Date: This date is the absolute last day to pay your total current charges before a late-fee is applied.")

[6]      Navient, *About Payments* available at https://navient.com/in-repayment/about-payments (last visited June 11, 2020).

contradicts its argument here that the "Total Payment Due" should be ignored by a reasonable consumer.

    b.   Navient's billing statement was deceptive

    Navient's monthly bills clearly and prominently notified Mr. Rivera that his payment was $23.29 rather than $0.00.  First, his billing statement states, "You have $23.39 due by 7/26/19," in the upper right-hand corner of the first page, exactly where a reasonable consumer would expect to see their payment due.[7]  Exh. A, ECF No. 1-1, p. 2.  Likewise, the bottom detachable portion of the first page that is perforated so that it can be returned with the borrower's payment—exactly where a reasonable consumer would expect their payment due to be repeated—states, "Total Payment Due: $23.39."  *Id*. And the email Mr. Rivera received regarding his monthly billing statement similarly stated "here's a snapshot of your monthly statement:  Total Payment Due: $23.39."  Exh. A, ECF No. 1-1, p. 5.

    Defendant contends that the small print under the "Account Summary" on the bills' first page "make[s] clear" that Mr. Rivera was only required to pay the income-based amount. Def. MOL, p. 6.  But that is wishful thinking, at best. The "Account Summary," (*see* Exh. A, ECF No. 1-1, p. 2), contains twelve (12) fields including:

        field 6:      Past Due Amount (Pay Now):  $0.00.
        field 7:      Pay Past Due Amount by [date] to avoid late fee of $0.00
        field 8:      Current Amount Due:  $0.00.
        field 9:      Current Amount Due Date: [date]
        field 10:    Pay Current Amount Due ( + any past due amount) by [date]
                      to avoid additional late-fee of:  $0.00 .
        field 11:    Unpaid Fees:  $23.39.
        field 12:    Total Payment Due (Past Due Amount + Current Amount Due +
                      Unpaid Fees): $23.39.

---

[7]     The example above describes Mr. Rivera's June 30, 2019 billing statement. Similar deceptive billing statements were mailed monthly to Mr. Rivera from 2015 to May 2019.

It would be a rare consumer who would bother to read the small print in the Account Summary and think that field 8 was the only amount he needed to pay, especially when this field is followed by a demand for "Unpaid Fees" (field 11) and "Total Payment Due" (field 12) indicating an entirely different amount.

The "Account Summary" thus suffers from the same defect as the perforated section on the first page because it highlights the "Total Payment Due," the amount that any reasonable borrower would reasonably believe he is supposed to pay.  (*see* Exh. A, ECF No. 1-1, p. 2).   Rather than clarify matters as Defendant argues, the "Account Summary" supports Plaintiff's argument in that it creates deceptive ambiguity and overwhelmingly suggests that the payment due is the "Total Payment Due" (field 12).  Nowhere in the "Account Summary" or on the bill's first page does Navient state that the "Current Amount Due" is the amount to be paid rather than "Total Payment Due."

Similarly, Defendant's second contention—that the fine-print on the third page of the billing statement overrides the "Total Payment Due," which is written in three different places on the first page of his billing statement as well as in his monthly billing email—fails. Def. MOL, p. 5.   The so-called saving disclosure states: "You are not required to pay more than the present amount due to remain current during the IDR [income driven repayment] plan."  Exh. A, ECF No. 1-1, p. 4, left hand column, 1/3 of the way down.   But "present amount due" is not defined.   Does "present" mean "current" or does "present" mean "Total Payment Due"? Or does it mean something else altogether?

A reasonable consumer could not be expected to understand that he did not have to pay the prominently repeated "Total Payment Due" from this ambiguous and undefined statement, thereby preventing dismissal of this action. *Broder v. MBNA Corp*., 722 N.Y.S.2d 524, (1st Dept. 2001),

12

(court refused to dismiss a GBL claim when disclosures in a credit card contract were ambiguous as to how payments would be allocated).

    c.  Assuming arguendo that the page three disclosure is clear, its presence does not cure the deceptive billing statement

       "[T]he mere presence of an accurate disclaimer does not necessarily cure other potentially misleading statements or representations." *Delgado v. Ocwen Loan Servicing, LLC*.  13–CV–4427 (NGG)  2014 WL 4773991(E.D.N.Y. 2014)(disclosure on back of $2.50 check that consumer was accepting a $50.00 a month appliance warranty contract for which she would receive a $2.50 credit "not conspicuous or prominent enough to necessarily cure" consumer's reasonable belief that she was negotiating a rebate check, not entering a contract).  *See* also *Minner v. Navient Corporation*, 18-CV-1086S, 2020 WL 906628 (W.D.N.Y. 2020) (although Navient's website correctly warned borrowers that forbearance is not a long-term solution for economic hardship, plaintiff reasonably relied on Navient's call-center agents who steered her in the wrong direction); *Orellana v. Macy's Retail Holdings, Inc.*, No. 17-CV-5192 (NRB), 2018 WL 3368716, at *14 (S.D.N.Y. July 10, 2018) ("[A] misrepresentation is not cured as a matter of law by a contradictory disclaimer.").

       Furthermore, the font size and placement of the disclaimer – in this case, in small print surrounded by other dense text on page three of the billing statement[8] – prevent it from curing the deceptive "Total Payment Due" on the first page. *Lonner v. Simon Prop. Grp., Inc.,* 866 N.Y.S.2d 239, 247 (2d Dept. 2008)(finding plaintiff stated a § 349 claim based on "the inadequate font size in which the [gift card's] dormancy fee provision was printed").

       Nor is the page three disclaimer equivalent to the disclaimer in *Lokai Holdings LLC v. Twin Tiger USA LLC,* 306 F.Supp.3d 629 (S.D.N.Y. 2018), as Defendant suggests.  Def. MOL, p. 17.

---

[8]      Exh. A, ECF No. 1-1, p. 4, left hand column, 1/3 of the way down.

In *Lokai*, plaintiff alleged that defendant misrepresented that its beads contained water. However, defendant's website explicitly addressed this issue, stating that the water it put into the beads could evaporate over time. Here, Navient would need an explicit disclaimer on its bill that matched Lokai's, such as "You Do Not Have to Pay the *Total Payment Due*." The so-called disclaimers on the first and third page do not approach such clarity or prominence.

   d. Defendant's oral representations likewise do not cure Defendant's deceptive
      billing statement

Defendant claims that the two oral representations of its agents compensated for any deceptive or ambiguous content in the bill. Def. MOL, pp. 11, 12, 17. Those two representations were made well after Mr. Rivera began paying the wrong amount requested by Navient in its bills. Compl. ¶¶ 157-163, 174, 184. Mr. Rivera initiated these calls, once in March 2016 and once in late January 2017, after Navient sent two emails advising him that his annual recertification for IBR had yielded a $0.00 IBR payment, yet the "Total Payment Due" on his subsequent bill remained at $23.39. Compl. ¶¶ 172-174, 183-184. Both call-center employees told Mr. Rivera he did not have to pay the late-fee that comprised all of the "Total Payment Due," and instead could pay just the IBR amount. Compl. ¶¶ 174, 184.

As a legal matter, a truthful oral representation does not cure a material deceptive written statement that violates a consumer protection statute. In *Burns v. Duplin Land Development, Inc.*, 621 F.Supp.2d 292 (E.D.N.C. 2009), a developer sold a parcel of land to a consumer, yet the mandatory consumer protection disclosures omitted material flood information concerning the purchaser's lot. The consumer admitted that he was verbally told that the lot he intended to purchase was on a flood plain, yet nevertheless sought statutory relief under the federal consumer protection statute.

14

In rejecting the seller's argument that its oral statements cured the misleading statements in its disclosure, the court noted that the consumer protection law was designed to protect reasonably prudent buyers, not simply this plaintiff. *Burns,* at 301.[9]  Hence, the statute did not require the purchaser to rely on the deception provided the deception was material.  *Id*. at 305 (finding non-reliance both consistent with the statutory construction of the law and the statute's remedial purpose to protect consumers from fraud).

Analogously, GBL 349 does not require the plaintiff to rely on the deceptive act.  *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000).  Rather, Plaintiff need only "show that the deceptive act caused the injury."  *Oswego Laborers v. Marine Midland Bank,* 85 N.Y.2d 20, 26 (1995).  Hence, just as in *Burns*, Navient cannot escape GBL liability by claiming its call-center agents orally cured its misrepresentation of the "Total Payment Due."  Indeed, Defendant cites no cases for such a proposition.

Moreover, Mr. Rivera reasonably believed that the oral representations of the agents were wrong.  Compl. ¶¶ 175-176, 188.   As in *Cohen JP Morgan Chase & Co.*, 498 F.3d 111, 127 (2d Cir.2007), Mr. Rivera reasonably believed that a reputable servicer of federally insured student loans would not add fees it could not legally demand in its bill, especially since Navient knew his financial problems qualified him for repayment relief . Compl. ¶¶ 149, 160, 175, 185.

Mr. Rivera further reasonably believed that the consequences of paying the "Total Payment Due" were less severe than following the wrong advice of call-center employees which could result in his disqualification from IBR and an unaffordable payment that could render him homeless.  Compl. ¶¶ 175, 176, 185, 191, 192.  *See*, *Delgado v. Ocwen Loan Servicing, LLC*.  13–CV–4427

---

[9]    *Burns v. Duplin Land Development, Inc*., 621 F.Supp.2d 292, 392 (E.D.N.C. 2009) ("The Interstate Land Sales Full Disclosure Act  . . . is designed to protect purchasers from fraud and deception in the sale of land. . . . Congress enacted [it] due to "revelations of substantial abuse in the sale of undeveloped land by promoters.").

(NGG)   2014   WL   4773991(E.D.N.Y. 2014) (deceived consumer continues to pay monthly appliance warranty charge for fear that "missed or late payments would result in late-fees or damage to her credit," not because she consented to warranty contract).

### e.   Many consumers complained about Defendant's deceptive billing practices to the CFPB and BBB

Finally, as mentioned above, many other borrowers shared Mr. Rivera's belief that he had to pay the "Total Payment Due", not the current amount due.  Exh. B, ECF No. 1-2.  Individual complaints to regulators can establish that a defendant's conduct deceived a reasonable consumer. *F.T.C. v. Wilcox,* 926 F. Supp. 1091 (S.D. Fla. 1995).

### f.   The cases that Defendant cites for the proposition that Mr. Rivera was an "unreasonable consumer" warranting dismissal are easily distinguishable

Defendant cites *Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2013) for the proposition that Mr. Rivera did not act reasonably given its so-called disclaimers.  However, a disclaimer may defeat a claim of deception "in only certain circumstances."   *Fink* at 742 (disclaimer within advertisement not likely to deceive reasonable consumer since advertisement set internet speed at "*up to* three times faster.")  Rather, such disclaimers do not necessarily cure the deceptive act when the entire context of the deception is considered.  *Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015); *Cohen v. JP Morgan Chase & Co*., 498 F.3d 111 (2d Cir.2007).

Defendant's reliance on *Milich* is likewise misplaced.  In *Milich*, the defendant insurance company accurately disclosed the terms under which worker's compensation would cover the policyholder's domestic workers. *Milich v. State Farm Fire & Cas. Co.*, 513 Fed.Appx. 97 (2d Cir. 2013).  This included a statement that it would follow New York law (which severely limited coverage to the policyholder's detriment).

16

Unlike in *Milich*, Defendant's deceptive act was not legally accurate.  Defendant admits this.[10]  This admission makes *Cohen,* not *Milich*, controlling. *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 127 (2d Cir. 2007) (reversing dismissal of GBL claim because bank deceived consumer by billing her for a fee that violated federal anti-kickback laws).

The remaining cases cited by Defendant did not rise to actionable GBL claims because the defendant did not materially misrepresent anything in writing or orally.  *Costo La Vigne v. Costco Wholesale Corporation*, 284 F.Supp.3d 496 (2018) (can of chicken containing water not deceptive because water content accurately reported on can's side panel); *Fermin v. Pfizer,Inc.*, 215 F.Supp.3d 209, 211 (E.D.N.Y. 2016) (underfilled pill-box not deceptive because it contained the exact number and size of pills listed on box enclosing pill-box); *Sands v. Ticketmaster-New York, Inc.*, 616 N.Y.S.2d 362, 363 (1st Dept. 1994) (plaintiff unhappy but not deceived by reseller mark-up); *Wurtzburger v. Ky. Fried Chicken*, No. 16-CV-08186 (NSR), 2017 WL 6416296, at *2 (S.D.N.Y. Dec. 13, 2017) (no deception where bucket of chicken not overflowing with chicken nevertheless contained 8 pieces of chicken as advertised).

## C.  The Injunction Claim Cannot Be Dismissed

### 1.  Addressing whether an injunction is appropriate is premature

At this pre-factfinding stage, addressing the appropriateness of an injunction is premature. Indeed, the injunctive relief Plaintiff has pled is not an independent cause of action.  It is a remedy to the GBL action after liability is established.  See, e.g. *Koch v. Greenberg,* 14 F.Supp.3d 247 (S.D.N.Y. 2014)(GBL injunction considered after three-week trial establishing liability).  In that sense, Plaintiff's request for an injunction is akin to a request for relief under the Declaratory

---

[10]      "[C]ritically, plaintiff was not required to pay it [the legal fee] under his IBR plan." Def. MOL, p. 4.

Judgment Act, 28 U.S.C. §§ 2201–2202 ("DJA") which cannot be dismissed under rule 12(b)(6). *Travis v. Navient*, 17-CV-4885 (RRM) 2020 WL 2523066, (E.D.N.Y. 2020).

### 2.  GBL 349 confers standing to enjoin deceptive conduct

GBL 349 "empower[s] consumers," especially "the disadvantaged," to "even the playing field" against "better funded and superiorly situated fraudulent businesses." *Watts v. Jackson Hewitt Tax Service Inc*., 579 F.Supp.2d 334 (E.D.N.Y. 2008).  To that end, GBL 349 allows a private litigant to seek injunctive relief in the name of other consumers: "any person who has been injured by reason of any violation of this section may bring an action  . . . to enjoin such unlawful act or practice . . . [and] . . . to recover []actual damages. . . . "

Thus,  Mr. Rivera need not show a possibility of future injury to enjoin Defendant's deceptive conduct.  To argue otherwise would be to eviscerate the injunctive relief provision of New York's consumer protection law because no deceived consumer would continue to subject himself to the deceptive conduct.  *See Ackerman v. Coca–Cola Co.,* 09–CV–395, 2013 WL 7044866, at *2–3, *14–15, *15 n. 23 (E.D.N.Y. July 18, 2013) (declining to dismiss GBL injunctive relief claim because to do so "would effectively bar any consumer who avoids the offending product from seeking injunctive relief"); *see* also *Koehler v. Litehouse*, Inc., 12–CV–04055, 2012 WL 6217635, at *6 (N.D.Cal. Dec. 13, 2012) (same for California consumer protection statute); *Belfiore v. Procter & Gamble Co*., 94 F.Supp.3d 440 (E.D.N.Y. 2015) (same for New York GBL).

Moreover, federal courts adjudicating state law claims use "applicable state law" to determine whether "injunctive relief may issue."  *Midland Funding LLC v. Brent*, 08 CV 1434, 2009 WL 3086560 (N.D. Ohio 2009).  Applying these principles to GBL claims, federal courts have not required a pleading of irreparable injury to enjoin deceptive conduct. *Barkley v. United*

18

*Homes,* LLC, 848 F.Supp.2d 248 (E.D.N.Y. 2012) (to obtain an injunction under GBL § 349, plaintiff needs only to show that the defendant violated the statute). *See* also *Chandler v. Walden Asset Management, LLC*, 2017 WL 1021594 (SD Ohio, 2017) (providing injunctive relief barring deceptive acts of a debt collector under Ohio consumer protection statute).

### 3. The eBay test is inapplicable because Mr. Rivera's claim arises from state law

Defendant argues that *Koch v. Greenberg,* 14 F.Supp.3d 247 (S.D.N.Y. 2014), prevents the issuance of a GBL injunction unless the four-factor *eBay* test is also satisfied. However, *eBay* arose in the context of a federal patent law claim, not a state consumer protection act claim that provides injunctive relief as a remedy. *eBay Inc. v. Mercexchange*, LLC, 547 U.S. 388, 392 (2006). While the *Koch* court explains why it thinks *eBay* is applicable, as discussed above, other federal district courts have enforced injunctive relief remedies created by state consumer protection laws without utilizing the eBay test. *Supra* at p. 18. Indeed, Defendant has cited no Second Circuit cases for the proposition that *eBay* applies to a claim resting solely on a GBL 349 violation.

### 4. Assuming arguendo that Mr. Rivera must satisfy the eBay standard to survive a 12(b)(6) motion to dismiss, he does so

Even if Plaintiff were required to satisfy the *eBay* standard, Mr. Rivera has sufficiently pled such facts, or, in the alternative, should be allowed to amend his complaint to more precisely plead such facts.

Under *eBay*, an injunction against conduct adjudicated as unlawful can be issued if:  (1) the plaintiff has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of

19

hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *eBay Inc.* at 391.

With respect to the first factor,  a small reduction in income can have a "devastating impact" on low-income persons with disabilities and hence cause irreparable harm.  *White v. Sullivan*, No. 89–335, 1991 WL 315124 (D.C. Vt. 1991).   Here, Navient's deceptive billing practices deprived Mr. Rivera of money needed to feel secure from hunger and live a dignified existence.  *See* discussion *supra* at p. 8 regarding Mr. Rivera's injuries.

With respect to the second *eBay* factor, monetary damages are adequate in business versus business litigation, such as *Koch*, but not here.  Damages cannot adequately redress the loss of enjoyment, hunger, and worsening depression that accompanied Mr. Rivera over 41 months when he was struggling to pay $23.39 while on welfare and homeless.  Compl. ¶¶ 3, 168-170, 188-192, 194, 197-200,  231-234.

With respect to the third *eBay* factor (the hardship endured by the plaintiff versus the defendant),  Defendant is a large company with huge resources to comply with federal law, as compared to the hardship and despair its incorrect and deceptive billing practices render on borrowers, like Plaintiff, with limited resources. Compl. ¶ 48; Exh. B, ECF No. 1-2. This case is not like *Koch*, where the proposed injunction would have created a hardship on the defendant – having to verify the veracity of every transaction because of a deceit that occurred nine years earlier – while providing little benefit to the *Koch* plaintiff and other wine merchants due to policy changes within the industry that made similar deceptions unlikely.  *Koch* at 284.   Here, Defendant's deceit is widespread and ongoing, and no changes in Defendant's billing practices are being implemented. Compl. ¶¶ 9, 120-121, Exh. B, ECF No. 1-2.

20

Finally, the public interest would not be disserved by a permanent injunction prohibiting Navient from incorrectly billing financially distressed borrowers who are entitled to pay less than what the current billing system illegally demands of them.

### D. Negligent Misrepresentation Has Been Satisfactorily Pled

The five elements of a negligent misrepresentation claim are: (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation (or incorrect statement) that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment. *Hydro Investors v. Trafalgar Power*, 227 F.3d 8, 20 (2d Cir. 2000).

Defendant is silent regarding elements three and four, but focuses on the remaining elements as not having been met. As discussed below, Plaintiff also satisfactorily pled elements one, two, and five of negligent misrepresentation.

### 1. The special relationship element of negligent misrepresentation is easily met

The special relationship determination usually is a factual inquiry not properly resolved in a motion to dismiss. *Kummel v. Schaefer*, 89 N.Y.2d 257 (1996); *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103-04 (2d Cir. 2001). A "special relationship" is less rigorous than a fiduciary duty (*Alley Sports Bar, LLC v. SimplexGrinnell, LP*, 58 F. Supp. 3d 280 (W.D. N.Y. 2014), yet more than an arm's length business relationship. *Suez Equity Investors, L.P.*, 250 F.3d at 103. To that end, the first question in the special relationship test is whether the

person making the misrepresentation held or appeared to hold unique or special expertise.  *Id.*, *see also Burton v. Label*, LLC, 344 F. Supp. 3d 680 (S.D. N.Y. 2018).

Here, Navient presents itself as an expert who is capable of ensuring student loan borrowers receive personalized and accurate information that economically benefits the borrower.  More particularly, it promotes its expertise with such statements on its website, which Mr. Rivera visited, as:

- "We are one of a select group of companies chosen to service student  . . .  loans for the U.S. Department of Education";
- "We thoroughly understand . . . applicable federal and state laws";
- We abstain from "a one-size-fits-all approach," and instead focus on customers' situations to "determine the right information" that customers need;
- We use compassion and personalized service to "enhance the Financial success of" student loan borrowers.  Compl. ¶ 111.

The special relationship test also examines whether a relationship of trust and confidence existed between the parties, as opposed to a normal business relationship where the parties look-out for themselves. *Silvercreek Management, Inc. v. Citigroup, Inc.,* 346 F. Supp. 3d 473 (S.D. N.Y. 2018).  Here, considerable trust and confidence existed between the parties because Defendant is the agent of the government and government-backed loans are issued to benefit society, not to generate profit for the government.  Navient's authority as an agent of the government is underscored on its webpage that states:

> WARNING – This system may contain U.S. Government information, which is restricted to authorized users ONLY. Unauthorized access . . . is prohibited and constitutes a violation of Title 18, United States Code, Section 1030, and may subject the individual to criminal and civil penalties.  Compl. ¶¶ 241-242.

Defendant's explicit relationship with the government creates the impression that Navient should be trusted to know what it is doing, must comply with high standards prescribed by the government, and that Navient abides by the laws that pertain to student loan servicing.

Further, Defendant broadcasts that it should be trusted:  "We are here to help you successfully navigate your student loans" and "Watch out for companies that offer 'student debt relief.' You never have to pay for help." Compl. ¶ 239.

Despite its explicit representations of expertise and trust, Defendant attempts to argue that student loan servicers are no different than lenders who never satisfy the "special relationship" element needed to survive a motion to dismiss.  Def. MOL, p. 8-9.  However, federally insured student loans, unlike private bank loans, do not involve loan shopping and/or arm's length negotiation.  Direct and FFEL loans are entitlements with complex repayment terms. Compl. ¶¶ 33-43, 47, 66-76, 239.  Borrowers like Mr. Rivera rely upon servicers for explanation, guidance, and accurate information in their billing statements. Compl. ¶¶ 149, 153, 174, 184.   Indeed, Defendant encourages its borrowers to ask it for help and to be wary of other companies that may unnecessarily charge a fee. Compl. ¶ 239.

Because student loan borrowers rely so heavily upon the expertise of servicers in determining how to manage their loans, numerous state law claims based on a special relationship have survived motions to dismiss against student loan servicers, unlike banks.  *See Nelson v Great Lakes*, 928 F.3d 639 (7th Cir. 2019) (HEA does not pre-empt state consumer law claims); *Daniel v. Navient Solutions*, 328 F.Supp.3d 1319 (DC Flor. 2018) (breach of fiduciary duty claim survives motion to dismiss where Navient gave wrong information to borrowers regarding their eligibility for public service loan forgiveness); *Travis v. Navient*, 17-CV-4885 (RRM) 2020 WL 2523066, (E.D.N.Y. 2020) (GBL claim survives motion to dismiss); *Minner v. Navient Corporation*, 18-CV-1086S, 2020 WL 906628 (WDNY 2020) (GBL and breach of contract claim survive motion to dismiss); *Hyland v. Navient,* 18-cv-9031(DLC), 2019 WL 2918238 (S.D.N.Y. 2019) (GBL claim survives motion to dismiss); *James v PHEAA* 2020 WL 2097640 (S.D.N.Y. 2020) (allowing

23

GBL claim regarding over-billing of borrowers in income-based repayment to go forward), *Olsen v. Nelnet,* 392 F.Supp.3d 1006 (D. Neb, 2019)(plaintiff adequately pled that student loan services negligently misrepresented IBR recertification deadlines).

2. The second element of negligent misrepresentation, false representation, is satisfied because Defendant falsified Mr. Rivera's payment amount on his monthly billing statements

Defendant admits it falsified the amount Mr. Rivera had to pay in its monthly billing statements ("you have $23.39 due 7/29/19" and "Total Payment Due" $23.39) by agreeing "Plaintiff was not required to pay [the $23.39 late-fee] under his IBR plan."  Def. MOL, p. 4. Defendant's argument that the "Account Summary" and page three fine-print corrected these false statements are unavailing.  *See* discussion *supra* at pp. 9-16.

Defendant also cites *Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380*, (1949) for the proposition that Mr. Rivera is presumed to know the law on how IBR payments are calculated and allocated, thereby negating any claim of deception.  However, *Merrill* only protects the government from having to discharge debts after its agents mislead borrowers, and Plaintiff is not seeking such relief here.  *Merrill* does not protect Defendant from liability regarding misrepresenting the "Total Payment Due."  Courts have repeatedly held that student loan servicers can be liable for misleading borrowers regarding public service, forbearance, income base repayment, and the timing of when payments are posted.  *See* discussion *supra* at p. 23.

3. Mr. Rivera satisfied the fifth element of his negligent misrepresentation claim because he reasonably relied upon Defendant's incorrect billing statement.

In general, the reasonableness of a plaintiff's reliance is a "nettlesome" and "fact-intensive" question that the court should "not lightly dispose of at the motion-to-dismiss stage." *Loreley Fin.*

24

*(Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160, 186 (2d Cir. 2015).  Moreover, the same facts supporting a "reasonable consumer" in a GBL claim can also satisfy the reasonable reliance element in a negligent misrepresentation claim.  *In Re: Kind LLC litigation*, 287 F.Supp.3d 457 (S.D.N.Y. 2018).  For the reasons discussed earlier, *supra* pp. 9-16, Mr. Rivera reasonably understood the "Total Payment Due" to represent the amount he owed to Navient each month, even though this was being incorrectly demanded.

## IV.   CONCLUSION

For the above reasons, Defendant's motion to dismiss should be denied.

Dated: June 16, 2020
Brooklyn, New York

By:     -s-  *Johnson M. Tyler*

JOHNSON M. TYLER,
Edward Josephson,
Shabnam Faruki
Brooklyn Legal Services
105 Court Street
Brooklyn, NY 11201
*Attorneys for Plaintiff Miguel Rivera*
(718) 237-5548 (direct) or (5500)(switchboard)
862-202-1850 (cell phone during pandemic)
jtyler@lsnyc.org